UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
In re:

Chapter 7

Amin Saghei a/k/a Amin Seghatbhi
d/b/a Amin Oriental Rug
d/b/a The Dry Clean Spa,

Case No.: 10-75983-DTE

Debtor.
-----------------------------------------------------x
Marc A. Pergament, Chapter 7 Trustee of the Estate of Amin Saghei aka Amin Seghatbhi d/b/a Amin Oriental Rug d/b/a The Dry Clean Spa,

Plaintiff,

v.

Adv. Pro. No.: 12-8310-DTE

Fernando Costa,

Defendant.
-----------------------------------------------------x

# MEMORANDUM DECISION

*Appearances:*

Weinberg, Gross & Pergament, LLP
Attorneys for Plaintiff
By: Nicholas Tuffarelli, Esq.
400 Garden City Plaza
Garden City, New York 11530

Kilstein & Kilstein L.L.C.
Attorneys for Defendant
By: Richard J. Kilstein, Esq.
River Drive Center 1
619 River Drive, Suite 200
Elmwood Park, New Jersey 07407

HONORABLE DOROTHY T. EISENBERG, U.S. BANKRUPTCY JUDGE

Before the Court are the Defendant's motion for summary judgment and the chapter 7 Trustee's cross motion for summary judgment. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and (b). This contested matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (E) and (O) and 11 U.S.C. §§ 541, 542 and 549. The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rule of Bankruptcy Procedure.

## FACTS

The Debtor filed for chapter 7 relief on July 30, 2010. At the time of his bankruptcy filing, the Debtor owned a 50 percent interest in a business known as On the Spot Cleaners, LLC doing business as The Dry Clean Spa (the "Business"), with Defendant Fernando Costa who owned the other 50 percent. On the Spot Cleaners, LLC was registered as a New Jersey limited liability company but there is no written operating agreement between the owners. The Business operated in New Jersey and opened on or about April 1, 2008.

The Defendant contributed $300,000 toward the start up costs of the Business by purchasing the necessary equipment. The Defendant also paid for the first month's rent for the commercial lease of the business premises and for renovations to the premises which was in addition to the $300,000 contributed. In total, the Defendant's initial capital contribution was $402,764.43 (the "Initial Capital Contribution"). When the Defendant and the Debtor agreed to join together to operate the Business, it was understood that the Debtor would need to bear half of the cost of the Initial Capital Contribution or approximately $201,382, that the Defendant had already advanced toward the Business. It is uncertain whether the Debtor was to reimburse the Defendant directly for the $201,382 the Defendant had advanced on the Debtor's behalf or

whether the Debtor would cover ongoing operating expenses of the Business as a means to cover his share of the Initial Capital Contribution. In total, Defendant contributed approximately $481,863.17 to the Business which includes the entire Initial Capital Contribution amount and the Debtor contributed approximately $133,199 to $141,337, all of which was used for the payment of ongoing operating expenses of the Business.

Although the Debtor never fully paid for his share of the Initial Capital Contribution, he continued to own 50 percent of the Business. The Business sustained a loss of $168,879 for 2008 and a loss of $19,753 for 2009. For the 2008 and 2009 tax years, the Business issued IRS Form K-1s to the Debtor and Defendant reflecting an equal share of the losses between the two members of the Business.

Both the Debtor and the Defendant worked at the Business approximately 15 hours a day, six days a week.  Neither the Debtor nor the Defendant was compensated for their services and no time sheets or other records regarding their hours were maintained. The Business did hire other employees, including Defendant's wife who worked part-time and was paid $10 an hour.

In July of 2009, the Debtor stopped showing up at the Business and made no more contributions to the Business after his departure.

The Business was sold to an unrelated third party on March 16, 2011 for $145,000, less a $15,000 broker's commission. Of the purchase price, $67,200 was in the form of a five-year promissory note (the "Purchaser's Promissory Note"). After accounting for closing costs, the Business received a net check in the sum of $52,074.96 of which $43,045.31 was used to pay the Business's remaining debt obligations to creditors. The Defendant received $9,029.65 from the sale of the Business and will continue to receive payment under the Purchaser's Promissory

Note. The bankruptcy estate did not receive any proceeds arising from the sale of the Business. The Defendant did not seek approval of the bankruptcy court prior to selling the Business even though the Debtor was a 50 percent owner of the Business.

On August 6, 2012, the chapter 7 Trustee commenced an adversary proceeding seeking to avoid certain transfers to Defendant related to the post-petition sale of the Business pursuant to 11 U.S.C. § 549(a) and to recover the property transferred pursuant to 11 U.S.C. §§ 541 and 542. The parties conducted discovery and the Trustee took the deposition of the Defendant on June 4, 2013 (the "Defendant's Deposition").

On October 24, 2013, Defendant filed his motion for summary judgment (the "Summary Judgment Motion") seeking dismissal of the complaint on the basis that the bankruptcy estate was not entitled to any of the proceeds from the sale of the Business because the Debtor had a negative capital account while the Defendant had a positive capital account of several hundred thousand dollars. On December 11, 2013, the Trustee filed a cross motion for summary judgment and in opposition to the Summary Judgment Motion asserting that the Debtor was an employee of the Business and thus, a creditor and was entitled to the payment of wages for services rendered on behalf of the Business prior to payment on the Defendant's capital account. The Trustee asserted that there was an alleged agreement between the Defendant and the Debtor to pay the Debtor $15 an hour. The Trustee calculated that the Debtor was owed wages in the approximate sum of $96,750 and seeks the payment of the $96,750 allegedly owed by the Business and a turnover of future payments on the Purchaser's Promissory Note. On December 17, 2013, the Defendant filed a reply in support of its Summary Judgment Motion and opposition to the Trustee's Cross Motion. A hearing was held on December 19, 2013 and the

matter was taken under submission.

DISCUSSION

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure as made applicable by Bankruptcy Rule 7056, the Court may award summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if a dispute over such fact "might affect the outcome of the suit under the governing law" and would preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The court needs to consider only the cited materials and a party may object that the material cited to dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2) and (3). Moreover, "an affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

When no genuine triable issues of material fact exist, the moving party is entitled to judgment as a matter of law and summary judgment should be granted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d. 265 (1986) (finding that entry of summary judgment is mandated against a nonmoving party "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof"). *See also Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986).

"The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonablely find

for the [nonmoving party].” *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252. Instead, the nonmoving party must “come forward with specific facts showing that there is a genuine issue for trial.” *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A court must always “resolve ambiguities and draw reasonable inferences against the moving party.” *Knight v. U.S. Fire Ins. Co.*, 804 F.2d at 11. However, the nonmoving party may not rely upon “mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.” *Id.*, 804 F.2d at 12. “Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no ‘genuine issue for trial.’” *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. at 587 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

Pursuant to section 549 of the Bankruptcy Code, the trustee may avoid a post-petition transfer of property of the bankruptcy estate that is not authorized under the Bankruptcy Code or by the court. 11 U.S.C. § 549(a). Under section 542, any entity in possession or control of property that the trustee may use, sell or lease shall deliver to the trustee and account for such property or the value of such property, unless such property is of inconsequential value or benefit to the estate. 11 U.S.C. § 542.

In order to determine whether a transfer of property may be avoided or whether property should be turned over to the estate, the Court must determine whether the estate has an interest in such property. As the Business was a New Jersey limited liability company that operated in New Jersey, New Jersey law would apply to determine the estate’s interest in the Business and the proceeds arising from the sale of the Business.

Under the current New Jersey Limited Liability Company Act,

> a member is obligated to the limited liability company to perform any promise to contribute cash or property or to perform services, even if he is unable to perform because of death, disability or any other reason. If a member does not make the required contribution of property of services, he is obligated at the option of the limited liability company to contribute cash equal to that portion of the agreed value (as stated in the records of the limited liability company) of the contribution that has not been made.

N.J. Stat. Ann. § 42:2B-33(a) (West, Westlaw through L.2013, c. 169 and J.R. No. 13).[1] In this instance, the Debtor was obligated and failed to contribute his share of the Initial Contribution in full either by the way of an up-front lump sum cash contribution or the payment of ongoing operating expenses of the business in sufficient sums. As of the Petition Date and the sale of the Business, the Debtor had a negative capital account, which is not disputed by the Trustee.

Instead, the Trustee argues in his Cross Motion that issues of material fact exist in whether the Debtor was a creditor of the Business and the amount of the Debtor's capital account. The Trustee argues that the Debtor has represented to him that he was an employee of the Business. The Trustee contends that the Debtor should have been entitled to a salary compensation and as a creditor of the Business, the bankruptcy estate should have received the benefit of the Debtor's salary compensation from the proceeds arising from the sale of the Business prior to the Defendant receiving a return of his capital contribution. New Jersey limited liability law provides that:

> [u]pon winding up of a limited liability company, the assets shall be distributed as follows:
> (1) To creditors, including members and managers who are creditors, to the extent otherwise permitted by law, in satisfaction of liabilities of the limited liability company ...
> (2) Unless otherwise provided in an operating agreement, to members and former

[1] Title 42 Chapter 2B of the New Jersey Statutes titled New Jersey Limited Liability Company Act has been repealed effective March 1, 2014 and will be replaced by Title 42 Chapter 2C titled Revised Uniform Limited Liability Company Act.

> members in satisfaction of liabilities for distributions under section 36 or 39 of this act; and
> (3) Unless otherwise provided in an operating agreement, to members first for the return of their contributions and second respecting their limited liability company interests, in the proportions in which the members share in distributions.

N.J. Stat. Ann. § 42:2B-51(a). The Trustee cites in his Statement of Material Fact to the transcript of the Defendant's Deposition (the "Defendant's Deposition Transcript") as evidence that the Debtor and the Defendant agreed that the Debtor would oversee the Business's daily operations and receive $15.00 per hour as compensation. Based upon the Defendant's testimony that the Debtor and the Defendant each worked approximately 15 hours a day, six days a week for approximately 15 months of which 40 hours per week were straight time and 45 hours per week were over-time, the Trustee calculated that the bankruptcy estate is entitled to unpaid wages of approximately $96,750.

However, the Court's review of the Defendant's Deposition Transcript does not reveal any factual support that the Debtor was providing his services to the Business in the capacity of an employee as opposed to a member and partial owner of the Business. There is no testimony or evidence that the Defendant and the Debtor agreed that the latter would be compensated $15 per hour for his services. In fact, neither the Debtor nor the Defendant was compensated for any services to the Business. No time sheets or other records regarding their work hours and any wages paid to either owner were maintained or provided as evidence of the Debtor's entitlement to wages. Accordingly, the Defendant's Deposition Transcript cited to by the Trustee neither supports the Trustee's contentions that the Debtor was a creditor of the Business nor does it dispute the Defendant's testimony that the Debtor provided unpaid services to the Business as an owner and partner.

Moreover, the Trustee's Cross Motion does not contain any affidavit or declaration made by the Debtor in accordance with Fed. R. Civ. P. 56(c), who is the only individual other than the Defendant, with personal knowledge as to the nature of the services provided by the Debtor to the Business and whether any oral agreement existed to compensate the Debtor for such services. There is no testimony or facts provided by the Debtor that would be admissible into evidence supporting the Trustee's position. The arguments raised by the Trustee are nothing more than conjectures that the Debtor may be deemed to be an employee of the Business and thus entitled to compensation without providing even a scintilla of evidentiary support. As the parties already had more than a year to conduct discovery prior to the filing of the Summary Judgment Motion and Cross Motion, the Court finds there are no genuine issues of material fact as to the Debtor's status with respect to the Business. There is nothing in the record to support the Trustee's argument. He has failed to provide any evidence to support a prima facie case.

As to the issue of whether the Debtor had initially contributed $133,199 or $141,337, the Court finds the issue to be irrelevant. Assuming the Debtor contributed the higher amount in cash, given that his obligation to pay the Initial Capital Contribution amounted to $201,382 and his capital account continued to be eroded due to operating losses from the Business each year, the Debtor had a negative capital account at the time of the sale. The Trustee does not present any evidence to dispute this nor has he presented any evidence to demonstrate that the Debtor has a positive capital account. On the other hand, the Defendant had contributed more than his share of the Initial Capital Contribution of $201,382 and notwithstanding the Defendant's share of the Business's operating losses for 2008 and 2009 which totaled, $94,316, the Defendant still has a positive capital account. Given that the net proceeds arising from the sale of the Business

after payment of creditors totaled less than $70,000 ($67,200 Promissory Note plus $9,029.65 distribution the Defendant received from the sale after payment of closing costs and to creditors), under N.J. Stat. Ann. § 42:2B-51(a), any remaining payments would be distributed to the Defendant to reduce his positive capital account. Although the bankruptcy estate was a 50 percent owner of the Business, there would be nothing left to distribute to the bankruptcy estate after distributions have been made to the Defendant under New Jersey's limited liability law. Accordingly, the Debtor and the bankruptcy estate do not have any interest in distributions from the sale proceeds of the Business pursuant to 11 U.S.C. §§ 541, 542 or 549.

CONCLUSION

Based upon the foregoing, the Defendant's Summary Judgment Motion is granted and the Trustee's Cross Motion is denied. Accordingly, this adversary proceeding is dismissed.

**Dated: Central Islip, New York**
**January 9, 2014**

**Dorothy Eisenberg**
**United States Bankruptcy Judge**